## THE CAPTAIN JOHN.[1]

### UNITED STATES *v.* THE CAPTAIN JOHN.

*(District Court, E. D. New York. January 30, 1890.)*

1. UNITED STATES MARSHAL—CUSTODY FEES.
   A marshal may receive more than $2.50 per day for custody fees on proof to the court of the existence of extraordinary circumstances, requiring extraordinary expenditure in order to maintain his custody.
2. SAME.
   A small steamer was libeled by the government and attached by the marshal, who placed extra keepers on her, and, on taxation of his bill, sought to charge $2.50 for

[1]Reported by Edward G. Benedict, Esq., of the New York bar.

each of three keepers during the day, and $2.50 for each of two keepers by night. A reference being ordered to take proofs as to the items in the marshal's bill, it appeared that when the steamer was attached she was lying at a dock without crew, engineer, or provisions, and no evidence was given from which an intention on the part of the claimants to remove her from the marshal's custody could be inferred. The marshal showed that the proceeding against the vessel had been characterized by the treasury department as an important one, and that he had informed the district attorney of his employment of extra keepers, which had been approved by the latter. *Held*, that the testimony did not show a state of facts requiring an extraordinary expenditure, and that the marshal was entitled to $2.50 per day for custody fees, but no more.

3. SAME.

A marshal cannot charge $2.50 custody fees for the day and $2.50 for night. *The Perseverance*, 22 Fed. Rep. 462.

4. SAME—REFERENCE TO ASCERTAIN AMOUNT OF FEES—COSTS OF REFERENCE.

In a proceeding by the government to obtain a decree of forfeiture against a vessel, when the forfeiture is remitted on condition that claimants of the vessel pay all costs and expenses, the costs of a reference to ascertain the amount of the marshal's fees must be borne by claimants, even though, on such reference, the sum claimed by the marshal has been reduced by the court to a sum less than what the claimants were at all times willing to pay.

5. SAME—COMMISSIONS—REV. ST. § 829—SETTLEMENT OF FORFEITURE PROCEEDING.

On settlement of a proceeding by the government to obtain forfeiture of a vessel, the marshal is entitled, under Rev. St. § 829, to commissions on the value of the vessel proceeded against.

In Admiralty. On hearing to ascertain amount of marshal's fees.

*H. D. Hotchkiss*, for claimant.

*Charles M. Stafford*, U. S. Marshal, *in pro. per.*

BENEDICT, J. The steam-boat Captain John was seized by the collector of customs for violations of law which subjected her to forfeiture. A libel was thereafter filed against her to enforce the forfeiture, and on October 4, 1889, she was seized by the marshal by virtue of process *in rem*, issued in accordance with the prayer of the libel. Thereupon proceedings were taken under the statute to obtain a remission of the forfeiture, and thereafter the secretary of the treasury remitted the forfeiture, and directed the boat to be released on the claimant's paying all costs and expenses incurred in the case by the United States. The marshal accordingly presented his bill to the court for allowance, which being objected to by the claimants, a reference was ordered to take proof as to the facts touching the items in dispute. The only disputed items are these: For three keepers, at $2.50 each day; for two keepers, at $2.50 each night; for pumping, $25.

Section 829 of the Revised Statutes provides that there shall be allowed to the marshal, for the necessary expenses of keeping boats, vessels, or other property attached or libeled in admiralty, not exceeding $2.50 a day. This section has been interpreted to apply to the expenses of maintaining the actual custody of vessels by the marshal under ordinary circumstances. It has no application to other kinds of expenses, nor was it intended to limit that kind of expense in extraordinary cases, such as appeared in the case of *The F. Merwin*, 10 Ben. 403, or, for instance, in a case where it is made to appear that the removal of the vessel from the custody or control of the marshal has been threatened by a mob, or by persons, without authority of law, intending to use force, or where there is reasonable ground to believe that the removal of the vessel from the

custody of the marshal is contemplated by means of fraud, deceit, or bribery. In such cases the marshal may, in my opinion, receive more than the sum of $2.50 per day, upon proof to the court of the existence of extraordinary circumstances, requiring the extraordinary expenditure in order to maintain his custody. The testimony in this case does not, however, in my opinion, show a state of facts calling for extraordinary expenditure. The vessel was a small steamer. She had on board 103 tons of coal, but she had neither crew nor engineer nor provisions. She was, when attached, lying at a wharf in the Atlantic dock, from which it seems clear that it would have been impossible for the claimants to have removed her, so long as a single keeper was present, on board; and there is nothing from which an intention to remove the vessel from the marshal's custody can be inferred.

The marshal has sought to justify the employment of extra keepers by proof that the proceeding against the vessel has been characterized by the treasury department as an important one; that he had informed the district attorney that he had put three keepers in charge, and his employment of extra keepers was approved by the district attorney. The evidence is not sufficient to throw upon the district attorney any responsibility for the employment of extra keepers; and, besides, in all such cases the marshal's right to charge for extra keepers must depend upon the facts made to appear to the court. As already stated, I am unable to find from any facts proved in this case that there was a necessity requiring the employment of extra keepers. The marshal is entitled to $2.50 per day for the days the vessel was in his custody, but no more. That he cannot charge $2.50 for day and $2.50 for night was decided by this court in the case of *The Perseverance*, 22 Fed. Rep. 462. This view of the case, as I understand the briefs, renders unnecessary the consideration of any of the other questions raised by counsel in regard to keepers' fees.

In regard to the charge of $25, expense of pumping, it appears that the owners of the vessel maintained a man of their own on board, who did some pumping, and, for all that appears, was able to do all the pumping required; for there was no serious leak or sudden emergency demanding unusual pumping. It also appears that $10 was paid by the marshal's keepers for some pumping,—$3 to a longshoreman, and $7 to an Italian. The payment of this money is positively sworn to; and, while it is not easy to see why the receipt said to have been taken from the Italian was not produced, still I think the $10 may be allowed upon the proof as it stands, especially as the expense of sending the case back to the referee for further proof on this point would probably exceed the $10 in dispute.

ON MOTION TO COMPEL MARSHAL TO PAY COSTS OF REFERENCE.

(February 20, 1890.)

BENEDICT, J. In this action, which is a proceeding in admiralty on the part of the United States to obtain a decree of forfeiture against the

steamship Captain John for violation of the laws of the United States, the claimant, after appearance and answer, submitted to the secretary of the treasury a petition, as provided by law, for a remission of the forfeiture, which was thereafter granted, upon the condition that the claimants pay all costs and expenses incurred in the case by the United States. In ascertaining the amount of the costs and expenses so incurred by the United States, a question arose as to the amount of the marshal's costs. This question was not presented in the ordinary way, by a taxation of the marshal's bill by the clerk, and an appeal therefrom to the judge, but, without objection, was presented to the court in the first instance, and, when it appeared to the court that a controversy existed as to the facts, the court ordered a reference to the clerk to take such testimony as might be offered bearing upon the amount of the marshal's costs. Much testimony having been taken and reported to the court by the clerk, the matter was argued before the court, when, by the decision of the court, the item in the marshal's costs of expenses of custody was largely reduced. The case now comes before the court upon two other questions,—one raised by the claimant, who contends that the expenses of the reference above mentioned should be directed to be borne by the marshal, upon the ground of the extensive reduction made by the court in the marshal's bill, as presented, coupled with the fact that the claimants were always willing to allow the marshal for his expenses of custody more than was allowed by the court.

Upon this question my opinion is that the marshal cannot be compelled to bear the expenses of the reference. Those expenses were a necessary incident to the case pending in court, in which case the marshal was not a party. The controversy which made a reference necessary was between the United States and the claimant. I am unable to discover any ground upon which any part of the costs of the suit can be charged upon the marshal. In ordinary cases, the expense of ascertaining the amount of the marshal's costs by the taxation of the clerk, which is fixed by statute, is never charged against the marshal, but forms part of the costs of the cause, to be paid by the parties. So, in this case, although the expense is greater than in ordinary cases, owing to the nature of the dispute which arose about the marshal's bill, the expense must be borne by one or the other of the parties to the litigation, and by the terms of the remission the claimant is the party to bear it.

The other question is raised by the marshal, who claims, by virtue of section 829, to be entitled to commissions upon the value of the vessel proceeded against. The paragraph of section 829 relied on is as follows:

"When the debt or claim in admiralty is settled by the parties without the sale of the property, the marshal shall be entitled to a commission of one per cent. on the first five hundred dollars, by the claim or decree, and one-half of one per cent. on the excess of the sum thereafter from five hundred dollars."

The contention of the claimant is that this statutory provision is confined by its terms to cases of a personal demand, in a proceeding to collect a debt or demand, and does not cover a case where the govern-

ment is seeking to enforce a forfeiture; and it is said that never until now has a marshal claimed commissions in such a case. There is a mistake here. In the case of *United States* v. *The Florida*, decided in the southern district of New York,in December, 1854,[1] where the language of section 829 was brought to the attention of the court by Mr. Evarts, the marshal was held to be entitled to commissions, under a state of facts precisely similar to the facts of this case. This decision has never, so far as I know, been questioned in this circuit, and I see no reason for declining to apply it in the present case. The word "claim," as used in the statute, can, with entire propriety, be held to include a claim of forfeiture to the United States in a proceeding *in rem* against a vessel; and the claim is settled by the parties, within the meaning of the statute, when the United States consents to relinquish its claim to the vessel on payment of costs. Unless the marshal can be compensated by virtue of this statute, he will receive no compensation whatever for the care and risk attendant upon the custody of this vessel for a period of 39 days. It cannot be supposed to have been the intention that such a service should be rendered without compensation. Says Mr. Justice BLATCHFORD, commenting upon this statute:

"The theory of this allowance is that the marshal in an admiralty suit *in rem* has attached the property, and holds it, and that then, without sale of the property by the marshal, the controversy is so disposed of by the parties that the marshal is called upon to give up possession of the property, so that he loses the fees for selling it and for receiving and paying over the money. In such a case he is allowed a commission, which is intended as a compensation for his risk and responsibility, just as the poundage allowed on final process, and the percentage allowed on the sale of property in admiralty, are each of them a compensation for risk and responsibility, not merely in selling the property, but in holding possession of it under process. Personally, he can have no other compensation for keeping safely the property; for the expense of keeping it, not exceeding $2.50 a day, can be allowed only when paid to a keeper." *In re Johnston*, 8 Ben. 201.

My conclusion, therefore, is that the expenses of the reference above mentioned must be paid out of the fund now in the registry, in place of the vessel, and that, in addition to the costs already allowed the marshal, he is entitled to the commission provided by section 829, to be calculated upon the value of the vessel proceeded against. If the parties cannot agree upon the value of the vessel, a reference to the clerk will be ordered to ascertain the same.

---

[1] Not reported.