COAST ENGINE & EQUIPMENT CORPORATION, a corporation, Plaintiff,

v.

SEA HARVESTER, INC., a corporation, and M/V SEA HARVESTER, her engines, tackle and appurtenances, Defendants.

In the Matter of the Bankruptcy of SEA HARVESTER, INC., a corporation, Debtor.

Nos. C77–282T, B78–31S.

United States District Court,
W. D. Washington.

Dec. 4, 1978.

James J. Mason, of Rovai, McGoffin, Turner & Mason, Tacoma, Wash., for Coast Engine & Equipment Corp.

John C. Merkel, U. S. Atty., W. D. Washington, Seattle, Wash., for Joseph J. Harvey, United States Marshal.

Carl P. Jensen, Seattle, Wash., for debtor.

Thomas T. Glover, Seattle, Wash., for trustee.

Joseph J. McGoran, Federal Way, Wash., for Estate of Paul Shelton.

Roy F. Kussman, Tacoma, Wash., for Peterson Boat Building Co.

Philip E. Hickey, Seattle, Wash., for John D. Ellis & Charles Lamb.

Edward G. Lowry, III, Seattle, Wash., for Todd Shipyard Corp.

Robert S. Friedman, Seattle, Wash., for Ronald Kluger.

## ORDER

BEEKS, Senior District Judge.

On November 2, 1978, by order of this court, the defendant vessel was sold by the

United States Marshal at public auction. Following the sale, the Marshal's office advised Coast Engine (the vendee) that it expected to be paid the routine poundage fee (commission), computed pursuant to 28 U.S.C. § 1921, in the amount of $7,860.32. Coast Engine takes the position that the Marshal is not entitled to poundage under § 1921 but rather is limited to the charge established by state law, R.C.W. 36.18.040, of $5.00 plus mileage at 15 cents per mile.

■ Three elements must be satisfied under § 1921 before the Marshal is entitled to his commission. The Marshal must: (1) seize or levy on property (including seizures in admiralty), (2) dispose of same by sale, set-off, or otherwise, and (3) receive and pay over money. At issue here is whether the first element is satisfied.

Central to this dispute is the decision in *Travelers Insurance Company v. M. T. Lawrence*.[1] In *Travelers,* parties to a real estate mortgage foreclosure action challenged the Marshal's assertion of a § 1921 poundage fee for selling the mortgaged property pursuant to a decree of foreclosure. In denying the § 1921 commission, the court held that "FRCP 69(a) and § 1921 are interrelated. 69(a) provides that state procedure shall determine what services the marshal will perform. § 1921 prescribes the fees he may collect for these services. Thus, if state law does not require a levy or seizure to be made when mortgaged property is sold pursuant to a decree of foreclosure, then according to 69(a) the marshal does not make a seizure or levy. Nor should he be compensated for making one under § 1921."[2]

Citing *Travelers,* Coast Engine maintains that under 69(a) the manner of procedure of the Marshal's sale pursuant to foreclosure of a preferred ship mortgage must be in accord with state law. Washington law requires no levy in aid of execution in such a sale. Therefore, the argument goes,

§ 1921 is inapplicable because a seizure or levy, being among the acts necessary for the statute to operate, is not required by the law of this state.

Alternatively, Coast Engine argues that even if 69(a) does not control, there was no levy in aid of execution as a matter of federal law. Thus, there can be no entitlement to § 1921 poundage as an essential element of § 1921 is lacking.[3]

The Marshal contends that it is inappropriate to look to local law under the circumstances of this case and that the explicit language of § 1921 must control. Further, the Marshal asserts that all three elements of § 1921, particularly the first requiring a seizure or levy, have been met.

■ The positions taken by Coast Engine and the Marshal are wide of the mark. In essence, the only question before the court is whether the actions of the Marshal in this case amounted to a "seizure in admiralty" within the meaning of § 1921. As in *Travelers,* the controlling consideration here is legislative intent.

Prior to 1962, § 1921 had remained relatively unchanged since its enactment in 1853. The statute read in pertinent part:

" . . . and for . . . seizing or levying on property, advertising and disposing of the same by sale, set-off, or otherwise according to law and receiving and paying over the money, the same fees and poundage as are or shall be allowed for similar services to the sheriffs of the States, respectively, in which the service is rendered;

\*    \*    \*    \*    \*    \*

For the sale of vessels or other property under process in admiralty, or under the order of a court of admiralty, and for receiving and paying over the money, 2½ per centum on any sum under $500, and 1¼ per centum on the excess of any sum over $500."

---

1.   509 F.2d 83 (9th Cir. 1974).

2.   509 F.2d at 88.

3.   Two older cases sustain the collection of Marshal's poundage in this situation, *The Cesare Augusto,* 39 F.Supp. 751 (N.D.Cal.1941); *The City of St. Ignace,* 19 F.2d 952 (N.D.Ohio 1927). Coast Engine argues that these cases do not reflect the current state of the law.

In 1962, in addition to other revisions not relevant here, the (then) separate section dealing with the Marshal's commission in admiralty sales was deleted. The legislative history of the statute indicates that in its place, the drafters chose to insert the phraseology "seizures in admiralty" into the general sales commission section of § 1921. "Seizures in admiralty," coupled with the second element of the general sales commission section (disposing of the same by sale, set-off, or otherwise), was apparently intended by Congress to supplant and take on the same meaning as the superceded language: "sale of vessels or other property under process in admiralty or under the order of a court of admiralty."[4]

There is nothing in the legislative history of the 1962 amendment to § 1921 to suggest that Congress intended to expand, restrict, or otherwise alter the scope of the admiralty sales portion of the statute by its incorporation into the general sales commission section.

This characterization is not overcome by 69(a). Whatever the merits of the "interrelationship" of 69(a) and § 1921 in a realty mortgage foreclosure setting, there appears to be no nexus whatsoever between 69(a) and § 1921 as regards sales in admiralty.

As pointed out by Judge Sneed in his dissenting opinion in *Travelers*, "the origin [of 69(a)] suggests that it was intended to follow in substance 28 U.S.C. § 727 (1940), which dealt with remedies by execution or otherwise available to a 'party recovering a judgment in any common-law cause in any district court,' and 28 U.S.C. § 729 (1940), which made available in proceedings to vindicate civil rights 'the common law, as modified and changed by the Constitution and statutes of the state wherein the court having jurisdiction of such civil or criminal cause is held' when the federal law was not 'adapted to the object' of such proceedings and where federal law failed 'to furnish suitable remedies.' "[5]

Local supplemental procedures, while deemed adequate and made applicable by 69(a) in other areas of the law, have never been utilized in admiralty. Rather a highly specialized body of supplemental procedures has been developed for use in courts of admiralty and is currently found in the Supplemental Rules for Certain Admiralty and Maritime Claims.

The distinctive feature of the in rem action is the sale of the vessel by the Marshal pursuant to court decree. A state does not have, nor could it have, a procedure with respect to in rem actions involving maritime liens on vessels. This is beyond its constitutional authority. The exclusive jurisdiction of such proceedings is within the federal domain.[6]

Accordingly, I conclude the Marshal is entitled to his commission for the sale of the M/V SEA HARVESTER.

---

**4.** H.Rep. No. 1724, 87th Cong., 2d Sess., p. 5 (1962).

**5.** 509 F.2d at 94.

**6.** As early as 1867, the Supreme Court of the United States, in the leading case of *The Moses Taylor,* 71 U.S. (4 Wall.) 411, 18 L.Ed. 397 (1867), held a California statute granting the state courts authority to administer in rem proceedings against vessels unconstitutional. The same court in the same term made it explicit in *The Hine v. Trevor,* 71 U.S. (4 Wall.) 555, 18 L.Ed. 451 (1867), that there is no right to proceed in rem in any court other than a court of admiralty.